# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-02804-DAP |
| *Masiowski v. AmerisourceBergen Drug Corp. et al.*, No. 1:18-op-45985 | Judge Dan Aaron Polster |

## THE PBMS' JOINT MOTION TO STRIKE AND JOINT OPPOSITION TO MICHAEL MASIOWSKI'S MOTION FOR LEAVE TO AMEND

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ......................................................................................................... 1

PROCEDURAL HISTORY ........................................................................................... 3

LEGAL STANDARD .................................................................................................... 5

ARGUMENT ................................................................................................................. 5

     I.      MASIOWSKI'S THIRD PROPOSED AMENDED COMPLAINT SHOULD
            BE STRICKEN. ........................................................................................... 5

     II.     MASIOWSKI FAILS TO SHOW GOOD CAUSE TO AMEND ........................ 6

            A.  Masiowski cannot show that he was diligent. .................................... 7

            B.  The PBMs will be prejudiced by the proposed amendments. ......................... 11

     III.    MASIOWSKI'S PROPOSED AMENDMENTS ARE FUTILE. ........................ 14

CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987)................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................5

*Baltrusaitis v. Int'l Union, UAW*,
    86 F.4th 1168 (6th Cir. 2023) ...............................................15

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) ................................................15

*Church Joint Venture, L.P. v. Blasingame*,
    947 F.3d 925 (6th Cir. 2020) ................................................11

*Courser v. Mich. House of Representatives*,
    404 F. Supp. 3d 1125 (W.D. Mich. 2019) ...........................14

*Dubuc v. Green Oak Twp.*,
    312 F.3d 736 (6th Cir. 2002) ................................................11

*Garton v. Crouch*,
    2022 WL 275519 (M.D. Tenn. Jan. 28, 2022).....................14

*Glazer v. Chase Home Fin. LLC*,
    704 F.3d 453 (6th Cir. 2013) ................................................10

*Gore v. Sanofi-Aventis U.S. L.L.C.*,
    2024 WL 3564841 (S.D. Ohio July 24, 2024).....................10

*Hance v. BNSF Ry. Co.*,
    645 F. App'x. 356 (6th Cir. 2016) ........................................11

*Helena Agri-Enterprises, LLC v. AAA Turf, Inc.*,
    2023 WL 4842838 (6th Cir. July 28, 2023)..........................11

*Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*,
    988 F.3d 260 (6th Cir. 2021) ..................................................5

*In re Nat'l Prescription Opiate Litig.*,
    2022 U.S. Dist. LEXIS 65760 (J.P.M.L. Apr. 8, 2022)............2, 4, 6, 13

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) ................................................................6

*Leary v. Daeschner*,
    349 F.3d 888 (6th Cir. 2003) ..............................................5, 6, 7, 10

*Love v. Does 1–9*,
    2021 WL 2134940 (D.N.J. May 26, 2021) ..................................12

*Patel v. Kapadia*,
    2019 WL 12762964 (W.D. Tenn. July 22, 2019) ......................7

*Pethtel v. Tenn. Dep't of Child. Servs.*,
    2020 WL 6827791 (E.D. Tenn. Nov. 20, 2020) ......................12

*Phelps v. McClellan*,
    30 F.3d 658 (6th Cir. 1994) ........................................................13

*Profitt v. Highlands Hosp. Corp.*,
    2024 WL 3622448 (6th Cir. Aug. 1, 2024) ............................10

*Ross v. Am. Red Cross*,
    567 F. App'x 296 (6th Cir. 2014) ......................................7, 11

*Ross v. Houston Indep. Sch. Dist.*,
    699 F.2d 218 (5th Cir. 1983) ....................................................13

*Rotella v. Wood*,
    528 U.S. 549 (2000) ....................................................................15

*Russell v. City of Bellevue*,
    2021 WL 1517921 (N.D. Ohio Apr. 16, 2021) ......................7

*Shane v. Bunzl Distrib. USA, Inc.*,
    275 F. App'x 535 (6th Cir. 2008) ..........................................11

*Stanley v. W. Mich. Univ.*,
    105 F.4th 856 (6th Cir. 2024) ....................................................5

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*,
    489 F.2d 968 (6th Cir. 1973) ....................................................13

*United Med. Supply Co. v. United States*,
    77 Fed. Cl. 257 (2007) ................................................................12

*Wilkins v. Bush*,
    2023 WL 199258 (E.D. Mich. Jan. 17, 2023) ......................14

iv

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*,
    2014 WL 6851607 (S.D. Cal. June 16, 2014)........................................................................13

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................................................5

Fed. R. Civ. P. 15.............................................................................................................7, 14

Fed. R. Civ. P. 15(a)..............................................................................................................5

Fed. R. Civ. P. 15(a)(2)..........................................................................................................5

Fed. R. Civ. P. 16...................................................................................................5, 6, 7, 14

Fed. R. Civ. P. 16(b)(1)..........................................................................................................5

Fed. R. Civ. P. 16(b)(3)(A)....................................................................................................5

Fed. R. Civ. P. 16(b)(4)..........................................................................................................5

**OTHER AUTHORITIES**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1488 (3d
    ed.) ....................................................................................................................................12

David Armstrong, *Drug Maker Thwarted Plan to Limit OxyContin Prescriptions at Dawn
    of Opioid Epidemic*, STAT (Oct. 26, 2016),
    https://www.statnews.com/2016/10/26/oxycontin-maker-thwarted-limits..........................9

## INTRODUCTION

In May 2024, this Court granted all MDL plaintiffs one "final opportunity" to seek leave to amend their complaints to add new defendants. ECF No. 5455 (**Final Amendment Order**) at 2. It ordered the PEC to file, "a ***single*** motion to amend the complaints of ***all*** plaintiffs who wish to add [a given] defendant." *Id.* at 1 (emphasis in original). When the deadline for doing so came in July 2024, the PEC filed omnibus motions on behalf of 1,833 plaintiffs seeking leave to add eighteen different Express Scripts- and OptumRx-related entities (collectively, the **PBMs**[1]).

One plaintiff, however, decided to defy the Court's order and go it alone. Instead of joining the omnibus motions, Michael Masiowski filed a separate motion for leave to amend on behalf of himself and a putative class of emergency room physicians. *Masiowski v. AmerisourceBergen Drug Corp. et al.*, No. 1:18-op-45985, ECF No. 33 (**First MLA**); ECF No. 33-2 (**First PAC**). His motion sought leave to add the PBMs and several other defendant groups to his case. *Id.* It also included—in stark contrast to the PEC's omnibus motions—a proposed amended complaint. *Id.*

But Masiowski wasn't satisfied with his motion or his proposed amended complaint. Ten days later, he filed an untimely "corrected" motion for leave to amend and attached a *second* proposed amended complaint that added defendants who (he claimed) had been "erroneously omitted" the first time. ECF Nos. 5582 (**Second MLA**); 5582-1 (**Second PAC**).[2] This he did after

---

[1] The Express Scripts entities are Evernorth Health, Inc.; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Specialty Distribution Services, Inc. The OptumRx-related entities are UnitedHealth Group Incorporated, Optum, Inc., OptumRx, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC (incorrectly identified as Optum Discount Card Services, LLC in Masiowski's motions), Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. We use "PBMs" for simplicity even though most of these entities are not pharmacy benefit managers and do not provide PBM services.

[2] The second proposed amended complaint added the PBMs to the case caption but did not change the substantive allegations pertaining to them.

the Court explicitly *denied* his request for an extension of his deadline to seek leave to amend. ECF No. 5537 at 1. Then, on December 19, 2024—*143* days after filing his original motion—he filed a *third* proposed amended complaint, attached to a modest "notice of filing [an] amended *exhibit*" to his corrected motion. ECF No. 5827 (emphasis added); ECF No. 5827-1 (**Third PAC**). In it, Masiowski adds over 100 new pages containing scores of new allegations about the PBMs going back decades. He asserts a new RICO claim against the PBMs that he *expressly declined* to bring in his earlier proposed pleadings. *Compare* First PAC ¶ 748 (bringing RICO claims against six non-PBM "RICO Defendants"), *and* Second PAC ¶ 748 (same), *with* Third PAC at 363 (bringing RICO claims in a new RICO count against "All Defendants"). And he proposes to add a new plaintiff never seen before in this MDL—Simon Clark, a physician from Missouri. Third PAC at 2, ¶ 66. Masiowski's one-sentence notice filing provides no justification for those significant proposed amendments or his untimeliness in bringing them. *See* ECF No. 5827. Nor does it explain why Clark should be allowed to bootstrap himself to Masiowski's action after the Judicial Panel on Multidistrict Litigation (**JPML**) already closed the MDL to new cases. *Id.*; *see In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2 (J.P.M.L. Apr. 8, 2022).

The PBMs object to Masiowski and Clark's abuse of the amendment process, and move the Court to strike Masiowski's third proposed amended complaint for the reasons stated in the motion to strike filed by certain Pharmacy Defendants.[3] ECF No. 5845. But even if the Court declines to strike that proposed pleading, it does not change the fact that Masiowski has failed across *all* his submissions to make the showings required under Federal Rules of Civil Procedure 15 and 16 for leave to amend his complaint. Nor could he given that he has been on notice of his proposed claims against the PBMs for years and therefore cannot credibly claim that he was

---

[3] In the alternative, the PBMs move to strike the proposed addition of Clark as a plaintiff.

diligent in seeking leave to bring them. Additionally, the PBMs would be severely prejudiced if Masiowski is granted leave to assert his proposed claims given the loss of evidence relevant to the PBMs' defenses during his lengthy delay and his proposed injection of new complex class claims into the MDL. And in any event, Masiowski's proposed claims against the PBMs are futile. His motion for leave to amend should therefore be denied as to the PBMs.

## PROCEDURAL HISTORY

Masiowski—an independent emergency room doctor—filed his original complaint in July 2018 in the U.S. District Court for the District of South Carolina. In that complaint, Masiowski presses claims on behalf of himself and a putative class of independent emergency room doctors, seeking compensation for alleged injuries from the opioid crisis. *Masiowski*, No. 1:18-op-45985, ECF No. 1 ¶ 423. He asserts claims against opioid manufacturers and distributors—but not PBMs—for RICO violations, negligence, and common-law fraud. *Id.* ¶¶ 432–518. The case was transferred to the MDL on August 20, 2018. *Masiowski*, No. 1:18-op-45985, ECF No. 8.

In November 2018, the Court directed all MDL plaintiffs to file any amended complaints on or before March 16, 2019. ECF No. 1106 at 3. By the time that deadline passed, many plaintiffs had filed complaints asserting claims against the PBMs. *See, e.g.*, *County of Webb v. Purdue Pharma, L.P., et al.*, No. 1:18-op-45175, ECF No. 1 (N.D. Ohio Jan. 25, 2018). Webb County's counsel had even filed public letters on the MDL docket in early 2018 notifying the Court and all parties that they were suing "a *critical defendant group*—pharmacy benefit managers." ECF Nos. 108 (emphasis added), 168. But Masiowski did nothing.

Years went by until, in April 2022, the JPML closed this MDL to new cases. In doing so, the JPML observed that the now "mature" MDL had largely "complete[d] its primary tasks" such

that "the benefits are outweighed by the effects of transferring new cases." *In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2.

In May 2024, the Court gave all MDL plaintiffs a "final opportunity" to seek leave to add new defendants. Final Amendment Order at 2. The Court instructed that "[f]or each defendant the PEC wishes to add to any case, the PEC shall file a ***single*** motion to amend the complaints of ***all*** plaintiffs who wish to add that defendant." *Id.* at 1–2. The deadline to file the motions was set for July 22, 2024, and later extended to July 29, 2024. *Id.* at 2; ECF No. 5522. Two weeks before the deadline, Masiowski moved for a 60-day extension for his case alone. ECF No. 5524 at 2. He argued that he had contacted the PEC on July 2 "with potential concerns regarding prospective defendants to be added," but had been rebuffed and told "to file a stand-alone motion," which he needed time to prepare. *Id.* The Court denied Masiowski's motion and reiterated that "[m]otions to amend complaints for all plaintiffs remain[ed] due July 29, 2024." ECF No. 5537 at 1.

Ultimately, Masiowski filed his *first* motion for leave to amend by the July 29 deadline and attached his *first* proposed amended complaint. *See* First MLA; First PAC. Ten days after the amendment deadline expired—and without leave of court—he filed his "corrected" motion for leave to amend and *second* proposed amended complaint. *See* Second MLA; Second PAC. Masiowski's first and second proposed amended complaints assert claims against the PBMs for negligence, gross negligence, common law fraud, public nuisance, unjust enrichment, and violation of the South Carolina Unfair Trade Practices Act. These proposed complaints also allege RICO violations and common law failure to warn, but not against the PBMs.

*Over four months later*—and again without leave of court—Masiowski filed his *third* proposed amended complaint as an "amended exhibit" to his corrected motion for leave to amend. *See* ECF No. 5827; Third PAC. The third proposed complaint adds Simon Clark as a new plaintiff,

injects dozens of new factual allegations going back decades, and asserts new RICO claims against the PBMs. He offered no justification for the belated third proposed complaint. *See* ECF No. 5827.

## **LEGAL STANDARD**

Rule 16 provides that "the district judge . . . must issue a scheduling order" that "must limit the time" in which the parties may "join other parties" or "amend the pleadings." Fed. R. Civ. P. 16(b)(1), (3)(A). After that deadline, a party can amend its pleadings only if it shows "good cause." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021) (citation omitted). "Another important consideration" is "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

If a plaintiff shows good cause under Rule 16, the court then "will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909. Although a "court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "[t]here are circumstances . . . where justice counsels against amendment," including those where the proposed amendment is "futile," meaning that it could not survive a motion to dismiss. *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## **ARGUMENT**

### I.  **MASIOWSKI'S THIRD PROPOSED AMENDED COMPLAINT SHOULD BE STRICKEN.**

As an initial matter, the Court should strike Masiowski's untimely third proposed amended complaint for the reasons stated more fully in the motion to strike filed by certain Pharmacy

Defendants. ECF No. 5845. The Court set July 29, 2024, as the deadline to seek leave to amend. ECF No. 5522. Masiowski asked to extend that deadline, but the Court denied his request. ECF No. 5537. Masiowski then defied the Court's orders by filing his third proposed amended complaint on December 19, 2024—over *four months* after the deadline—without any explanation. ECF No. 5827. Lacking *any* justification for his delay, that untimely filing should be stricken. *See* ECF No. 5749 (denying belated motion to add plaintiffs to a motion for leave to amend).

In the alternative, the PBMs move to strike Clark as a proposed plaintiff. The JPML has closed the MDL to new cases. *In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2. Clark cannot circumvent the JPML's order by piggybacking on Masiowski's action. If Clark wishes to become a plaintiff, he must file a new case.

## II.    MASIOWSKI FAILS TO SHOW GOOD CAUSE TO AMEND.

Masiowski has not shown good cause to amend his complaint under Rule 16 in any of his motions or proposed amended pleadings. To demonstrate good cause, Masiowski must first show that he was diligent—that is, that he could not have sought leave to amend before the deadline or any earlier than he did. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (citation omitted); *Leary*, 349 F.3d at 907. If—and only if—he can establish diligence, then the Court must also consider the potential for prejudice to the PBMs. *See Leary*, 349 F.3d at 909. Masiowski fails to satisfy either requirement.

Masiowski's failure to satisfy Rule 16's good cause standard is best illustrated by the fact that he makes no attempt to do so. In his motion, Masiowski does not discuss, or even cite, Rule 16. The only statements in his motion regarding good cause are two conclusory pronouncements that "Plaintiff has identified good cause below to add the below listed Defendants" and "Plaintiff Masiowski has demonstrated good cause to seek leave to amend his complaint to add the above

listed defendants." Second MLA at 5, 11. But Masiowski's burden under Rule 16 is to "*affirmatively* show good cause supports amending the case schedule," *Russell v. City of Bellevue*, 2021 WL 1517921, at *2 (N.D. Ohio Apr. 16, 2021) (emphasis added), and to do so *before* showing that amendment is appropriate under Rule 15, *Leary*, 349 F.3d at 906. His conclusory reference to "good cause" and quick progression to Rule 15 fall far short of the required "affirmative showing." *See Patel v. Kapadia*, 2019 WL 12762964, at *2 (W.D. Tenn. July 22, 2019) (denying leave to amend where plaintiffs only "reference[d] Rule 16(b)'s 'good cause' standard in both their motion and supporting memorandum of law and state in a conclusory manner that 'good cause exists to modify the scheduling order'") (cleaned up). In any event, Masiowski could not show good cause even if he tried because he cannot show that he acted diligently in bringing his proposed amendments or that they would not result in prejudice to the PBMs.

### A. Masiowski cannot show that he was diligent.

A plaintiff cannot show diligence "where [he] was aware of the facts underlying the proposed amendment to [his] pleading but failed, without explanation, to move to amend the complaint before the deadline." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (citing *Leary*, 349 F.3d at 908). Here, Masiowski filed his original complaint in July 2018. He argues that he has "until now been precluded from seeking [ ] leave to amend by CMO1," and for that reason, "Defendants are incapable of demonstrating . . . undue delay." Second MLA at 4. That argument is wrong for four reasons.

*First*, Masiowski misconstrues the standard. It is not the PBMs' burden to show a *lack* of diligence; it is *his* burden to show diligence *affirmatively*. *Russell*, 2021 WL 1517921, at *2. Masiowski makes no effort to explain why he did not seek leave to add claims against the PBMs before 2024 or to show that he brought those claims as diligently as he could.

*Second*, the Court expressly *allowed* Masiowski (and any other plaintiff) to amend his complaint to add claims against the PBMs (and other defendants) on or before March 16, 2019, *notwithstanding* the moratorium on substantive filings in CMO-1. ECF No. 1106 at 3. Indeed, as discussed more below, many other MDL plaintiffs asserted virtually identical claims against the PBMs before the March 2019 deadline for amended complaints.

*Third*, Masiowski could have sought leave from the moratorium to amend his complaint even after March 2019. Many other MDL plaintiffs did so, including those that sought to add allegations against the PBMs. *See* ECF No. 4817 (motion by Jefferson County, NY, for leave from moratorium to permit amendment of its complaint to add allegations against the PBMs, granted by text order on January 25, 2023); ECF No. 4819 (same as to Webb County, TX); ECF No. 4821 (same as to Town of Bennington, VT, and others). Masiowski provides no explanation for his failure to make a similar effort.

*Fourth*, Masiowski was able to bring his proposed claims against the PBMs both before and after the March 2019 deadline because he has been on notice of those claims since at least January 2018, when Webb County, TX, filed the first opioid case against the PBMs. *See County of Webb v. Purdue Pharma et al*., No. 1:18-op-45175, ECF No. 1 (Jan. 25, 2018) (**Webb County Compl.**). Webb County alleged that the PBMs negotiated for "rebates or financial incentives" to "place[] opioids in a preferred place on a formulary or otherwise ma[k]e opioids available for improper use." *Id*. ¶ 424. And Webb County alleged that PBMs "refused" to limit access to opioids because of those rebate payments. *Id.* ¶ 255; *see also id*. ¶¶ 17–21, 63, 253. Webb County also alleged that "Manufacturer Defendants and their PBM allies had access to scientific studies, detailed prescription data, and reports of adverse events, including reports of addiction, hospitalization, and deaths – all of which made clear the harms from long-term opioid use." *Id*.

¶ 234; *see also id*. ¶ 317 ("Defendants had in their possession and control . . . data suggesting or proving that large amounts of opioids were being diverted from legitimate, legal channels and used for medical treatment."). Masiowski now seeks to add these same allegations in his third proposed amended complaint. *See, e.g.*, Third PAC ¶¶ 168, 189, 191. And similar statements are included in Masiowski's motion as "reasons" for adding the PBMs to his case. *See* Second MLA at 10. Yet Webb County relied on publicly available documents to make these same allegations *six years* before Masiowski. *See, e.g.*, Webb County Compl. ¶¶ 16 n.8, 20 n.9, 63 & n.25, 118 n.29, 253 n.100, 255 & n.103. For example, one of those sources, a 2016 article published by STAT, claimed that "the rebates paid to pharmacy benefit managers were used to guarantee favorable status for OxyContin on their listings of approved drugs." *See* David Armstrong, *Drug Maker Thwarted Plan to Limit OxyContin Prescriptions at Dawn of Opioid Epidemic*, STAT (Oct. 26, 2016), https://www.statnews.com/2016/10/26/oxycontin-maker-thwarted-limits.

Webb County's complaint was no secret. Quite the opposite—Webb County's attorneys filed two public letters on the MDL docket in early 2018 notifying the Court and all parties of its new lawsuit "nam[ing] a *critical defendant group*—pharmacy benefit managers ('PBMs')." ECF Nos. 108 (emphasis added), 168. These letters further explained Webb County's core allegations that PBMs (1) impact the supply of opioids through formulary placement, and (2) possess valuable data on which drugs were dispensed to plaintiffs' communities. *Id.* Webb County's attorneys also wrote to PEC leadership alerting them of Webb County's complaint and specifically requesting the creation of a fourth PBM track—a letter which they filed on the MDL docket in September 2018. *See* ECF No. 978-6. Many other plaintiffs followed Webb County's lead and filed claims

against the PBMs before or shortly after March 2019.[4] Indeed, the PEC itself filed an amended complaint against the PBMs in the Track Two cases in 2019. ECF No. 2582.

Simply put, Masiowski has had notice of the basis for his claims against the PBMs since at least 2018—and his motion admits as much. He states that his proposed amendments are brought based on "information gathered *over the course of the litigation in the MDL*" (including "the developments of the various Bellwether trials") and that he has "*long anticipated*" adding the PBMs to his complaint. Second MLA at 4 n.3 (emphasis added). But "a party cannot show diligence when it is 'aware of the basis of [a] claim for many months' and fails to pursue that claim." *Profitt v. Highlands Hosp. Corp.*, 2024 WL 3622448, at *4 (6th Cir. Aug. 1, 2024) (quoting *Leary*, 349 F.3d at 908). Here, Masiowski waited *years* before seeking leave to amend, so he cannot establish diligence. *See, e.g.*, *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459 (6th Cir. 2013) (affirming denial of leave to amend because plaintiff "should have sought leave as soon as he learned of [the] new fact"); *Gore v. Sanofi-Aventis U.S. L.L.C.*, 2024 WL 3564841, at *5 (S.D. Ohio July 24, 2024) (determining that the plaintiff was not diligent because "allegations she otherwise lifted from the proposed third amended master complaint existed since late 2019 when the steering committee moved to file that version of the master complaint" in an MDL).

---

[4] *See, e.g.*, *County of Webb v. Purdue Pharma, L.P., et al.*, No. 1:18-op-45175; *Jefferson County, et al. v. Williams, et al.*, No. 1:19-op-45371; *City of Huntington et al. v. Express Scripts Holding Company et al.*, No.1:18-op-45984; *Employer-Teamsters Local Nos. 175 & 505 Health & Welfare Fund et al. v. Purdue Pharma, L.P. et al.*, No. 1:18-op-45446; *Buchanan County v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45253; *City of Paterson v. Purdue Pharma, L.P., et al.*, No. 1:18-op-45371; *City of Springfield v. Purdue Pharma, L.P.*, No. 1:18-op-45899; *Montgomery County v. Purdue Pharma, L.P.*, No. 1:19-op-45234; *Giles County v. Purdue Pharma, L.P.*, No. 1:19-op-45236; *City of Galax v. Purdue Pharma, L.P.*, No. 1:19-op-45243; *Henry County v. Purdue Pharma, L.P.*, No. 1:19-op-45245; *Pittsylvania County v. Purdue Pharma, L.P.*, No. 1:19-op-45247; *City of Norton v. Purdue Pharma L.P.*, No. 1:19-op-45249; *Lee County v. Purdue Pharma, L.P.*, No. 1:19-op-45251; *Dickenson County v. Purdue Pharma, L.P.*, No. 1:19-op-45252; *Washington County v. Purdue Pharma, L.P.*, No. 1:19-op-45254; *Page County v. Purdue Pharma, L.P.*, No. 1:19-op-45275; *City of Alexandria v. Purdue Pharma, L.P.*, No. 1:19-op-45246.

**B.      The PBMs will be prejudiced by the proposed amendments.**

Even if Masiowski could establish diligence, his motion should still be denied because the PBMs will be prejudiced by allowing his proposed amendments. The longer the movant's delay in seeking leave to amend, "the less prejudice the opposing party will be required to show" to find a lack of good cause. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002) (citation omitted). Because of the length of Masiowski's delay in seeking leave to amend, the PBMs must show only minimal prejudice. That showing is easily made—and Masiowski does not even try to prove otherwise. Instead, his motion makes nothing more than two conclusory assertions that his proposed amendment "does not prejudice defendants" and that "granting leave to amend would result in no prejudice to Defendants." Second MLA at 4, 11. Those statements are false.

The Sixth Circuit routinely denies leave to amend on prejudice grounds when plaintiffs seek to amend their complaints *months* after the amendment deadline. *See, e.g.*, *Helena Agri-Enterprises, LLC v. AAA Turf, Inc.*, 2023 WL 4842838, at *3 (6th Cir. July 28, 2023) (13 months after the deadline); *Hance v. BNSF Ry. Co.*, 645 F. App'x. 356, 364 (6th Cir. 2016) (15 months ); *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) (10 months); *Ross*, 567 F. App'x at 306 (1.5 years). Yet here, Masiowski waited *five years* after his original amendment deadline to seek leave to add claims against the PBMs. The prejudice from "a nearly five-year delay" is "apparent and substantial." *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020). It can also take several forms. Here, the PBMs would be unduly prejudiced by having to conduct belated discovery, attempt to prove their defenses, and pursue potential claims against third-parties in Masiowski's case with lost and spoliated evidence. For instance, the PBMs may seek an allocation of liability against third parties that operate in South Carolina—Masiowski's home jurisdiction. To prevail on those claims, the PBMs would need evidence

demonstrating the third parties' fault—such as communications regarding opioid diversion, regulatory compliance, or opioid dispensing data. But because of the passage of time during Masiowski's delay in bringing his claims, that crucial evidence may have been lost or gone stale— a consequence that constitutes substantial prejudice. *See, e.g.*, *Pethel v. Tenn. Dep't of Child. Servs.*, 2020 WL 6827791, at *29 (E.D. Tenn. Nov. 20, 2020) (finding "significant prejudice" because "the events of this action occurred over a decade ago, [and] it is unlikely that many of the new parties still have documentation or records from the time period"); *Love v. Does 1–9*, 2021 WL 2134940, at *3–4 (D.N.J. May 26, 2021) (affirming denial of motion to amend based, in part, on prejudice to defendants from lost witnesses because of plaintiff's delay); *see also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1488 (3d ed.) (collecting cases finding prejudice where "delay has resulted in the loss of valuable evidence or an important witness").

The prejudice from lost evidence is magnified where a plaintiff fails to timely implement a litigation hold. *See United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (2007) ("Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence."). The Court ordered the PEC to coordinate with all plaintiffs seeking leave to amend and file a notice "indicating whether a litigation hold was implemented in each case and, if so, when." ECF No. 5517 at 2. Although the PEC did so for the plaintiffs seeking leave to amend in the PEC's omnibus motions, ECF No. 5673-3, Masiowski is not listed in the PEC's submission, nor did he file his own disclosure. That is particularly troubling because the PEC's submission revealed that hundreds of plaintiffs seeking leave to amend have never implemented a litigation hold even though they, like Masiowski, filed suit years ago. *See* ECF No. 5687-1. When parties fail to implement litigation holds, "[t]he Parties and the Court are left to speculate on the contents

of the despoiled evidence and the degree of prejudice suffered by the party seeking the evidence." *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *16 (S.D. Cal. June 16, 2014). The destruction of relevant documents will compromise the PBMs' abilities to defend themselves, and so Masiowski should be denied leave to amend his complaint when he has failed to comply with the Court's order to confirm that he has acted appropriately to preserve evidence.

The PBMs also face undue prejudice from Masiowski's attempt to inject new and complex class claims into the MDL at this late hour. *See Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 229 (5th Cir. 1983) (finding proposed amendment "undoubtedly" prejudicial because it "would add new and complex issues to a case [that is] already protracted and complicated" and entail "new discovery, additional hearings, and, likely, more appeals"). While Masiowski sat on his claims for years, this MDL kept moving toward completion. Just over four years after the MDL began, the JPML ordered that it would no longer add new actions to this "mature litigation." *In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *1. Since then, the JPML has declined to transfer cases into the MDL.

But instead of allowing the MDL to work towards resolution, Masiowski now seeks to add a new plaintiff class of independent emergency room doctors at the eleventh hour. That purported class is unlike any plaintiff group previously alleged in the MDL. If Masiowski is granted leave to amend, the PBMs will need "to expend significant additional resources to conduct discovery" on the proposed class "and prepare for trial," which would "significantly delay the resolution of the dispute." *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994). At this late stage, "to put [the PBMs] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Troxel Mfg. Co. v.*

*Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973). In light of that prejudice, Masiowski cannot show that his proposed amendments are supported by good cause.

## III.  MASIOWSKI'S PROPOSED AMENDMENTS ARE FUTILE.

In addition to his failure to show good cause under Rule 16, *none* of the claims against the PBMs in *any* of Masiowski's proposed amended complaints could survive a motion to dismiss. That makes them futile under Rule 15, so his motion for leave to amend must be denied.

In his first and second proposed amended complaints, Masiowski identifies the various OptumRx-related and Express Scripts-related entities as "PBM Defendants" in the "Parties" section of the pleading, but never makes any substantive allegations against any of them— collectively or individually—in the hundreds of pages of allegations and claims that follow. *See* First PAC ¶¶ 115–16; Second PAC ¶¶ 112–13. And all three proposed amended complaints fall back on general allegations against all "Defendants" collectively. *See, e.g.*, First PAC ¶¶ 48, 62, 839; Second PAC ¶¶ 349, 588, 841; Third PAC ¶¶ 63, 239; *see also, e.g.*, Third PAC ¶¶ 44, 167 (collective allegations against "Major PBMs"). "[D]istrict courts within the Sixth Circuit . . . have uniformly held that [such] 'group pleading' does not suffice to state colorable claims against individuals." *Garton v. Crouch*, 2022 WL 275519, at *8 (M.D. Tenn. Jan. 28, 2022) (collecting cases); *accord, e.g.*, *Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1140 (W.D. Mich. 2019), *aff'd*, 831 F. App'x 161 (6th Cir. 2020); *Wilkins v. Bush*, 2023 WL 199258, at *3 (E.D. Mich. Jan. 17, 2023).

Masiowski also fails to allege in any of his proposed amended complaints *any* connection between each PBM entity and the state of South Carolina that would support personal jurisdiction in that state over each entity. Instead, he spends pages alleging connections to *New York*. *See* First PAC ¶¶ 115–16; Second PAC ¶¶ 112–13; Third PAC ¶¶ 115–16 (alleging that Optum and Express

Scripts entities held licenses in New York). Masiowski fails to explain how the PBMs' alleged connections to New York could possibly demonstrate that they "purposefully avail[ed] [themselves] of the privilege of acting" in South Carolina—a prerequisite to finding personal jurisdiction. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002).

Additionally, Masiowski's proposed RICO claims are untimely. Federal civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). The four-year limitations period begins "when [the] plaintiff knew or should have known of his injury." *Rotella v. Wood*, 528 U.S. 549, 553–55 (2000); *see also* ECF No. 2568 at 13 ("The RICO limitations period is triggered by 'discovery of the injury, not discovery of other elements of a claim.'") (quoting *Rotella*, 528 U.S. at 555). Masiowski's original complaint shows that he was well aware of the alleged injuries arising out of the opioid crisis by no later than July 26, 2018, when he filed his original complaint. *See Masiowski*, No. 1:18-op-45985, ECF No. 1. Yet Masiowski waited more than six years before moving for leave to amend. *See* First MLA. Because Masiowski was not diligent in moving to amend to add RICO claims against the PBMs before the limitations period expired, those claims would be futile if pleaded now. And no tolling doctrines save Masiowski's time-barred RICO claims because he fails to propose factual allegations demonstrating entitlement to any of them. Nor could he given his lack of diligence. *See Baltrusaitis v. Int'l Union, UAW*, 86 F.4th 1168, 1178–79 (6th Cir. 2023) (holding that equitable tolling did not apply because the plaintiffs were not diligent in pursuing their claim). Masiowski's motion for leave to amend should be denied as futile.

## **CONCLUSION**

Masiowski has failed to satisfy Rules 15 and 16 at every step. The Court should deny Masiowski's motion for leave to amend.

Respectfully submitted this 16th day of January, 2025.

 /s/ Brian D. Boone
Brian D. Boone
Brandon C.E. Springer
Matthew P. Hooker
William W. Metcalf
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com
brandon.springer@alston.com
matthew.hooker@alston.com
will.metcalf@alston.com

Andrew Hatchett
Grace Assaye
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com

*Attorneys for UnitedHealth Group
Incorporated; Optum, Inc.; OptumInsight,
Inc.; OptumInsight Life Sciences, Inc.;
OptumRx, Inc.; OptumRx Discount Card
Services, LLC; Optum Perks, LLC;
OptumHealth Care Solutions, LLC;
OptumHealth Holdings, LLC; and Optum
Health Networks, Inc.*

 /s/ Jonathan G. Cooper
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
T: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
T: (213) 443-3000
sagevandenheuvel@quinnemanuel.com

Tara MacNeill
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
T: (305) 402-4880
taramacneill@quinnemanuel.com

*Attorneys for Express Scripts, Inc.; Express
Scripts Administrators, LLC; Medco Health
Solutions, Inc.; ESI Mail Order Processing,
Inc.; ESI Mail Pharmacy Service, Inc.;
Express Scripts Pharmacy, Inc.; Evernorth
Health, Inc. (formerly Express Scripts
Holding Company); and Express Scripts
Specialty Distribution Services, Inc.*